## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN THE MATTER OF THE TAX LIABILITIES OF:<br><br>JOHN DOES, United States taxpayers who, at any time during the years ended December 31, 2014, through December 31, 2023, used the services of the Trident Trust Group, including its predecessors, subsidiaries, divisions, affiliates, and associates to establish, maintain, operate, or control any foreign financial account or other foreign asset; any foreign corporation, company, trust, foundation or other legal entity; or any foreign or domestic financial account or other asset in the name of such foreign entity. | Case No. |

## UNITED STATES' *EX PARTE* PETITION FOR LEAVE TO SERVE "JOHN DOE" SUMMONSES

The United States of America hereby files this *ex parte* petition under Section 7609(f) of the Internal Revenue Code, 26 U.S.C. § 7609(f), for leave to serve Internal Revenue Service "John Doe" summonses upon TT (USA) Holdings, Inc. ("TT-USA"), Trident Corporate Services, Inc. ("TCS-USA"), and Trident Fund Services, Inc. ("TFS-USA") and submits the supporting Declaration of Randy Hooczko ("Hooczko Declaration"). The Court's determination on the United States' petition "shall be made ex parte and shall be made solely on the petition and supporting affidavits." 26 U.S.C. § 7609(h)(2). Because the pleadings filed in this proceeding

will not be served upon any person or entity and no other filings are permitted from other persons or entities, this petition is ripe for the Court's consideration. The United States respectfully requests that the Court review the petition and supporting documents and enter the proposed Order at the Court's earliest opportunity.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..............................................................................4

BACKGROUND .................................................................................................7

I.    U.S. Taxpayers Must Report Foreign Income and Disclose Foreign Financial Accounts and Entities..............................................................................................7

II.   Offshore Tax Evasion ...........................................................................8

III.   The TT-Group...........................................................................................12

  A.    The TT-Group Offers Services that Enable U.S. Clients to Conceal Assets 12

  B.    Information from Other Sources Corroborates the IRS's Belief That U.S. Taxpayers Use the TT-Group to Evade Taxes ....................................................16

IV.   The Summonses...........................................................................................16

ARGUMENT ...................................................................................................18

I.    The Investigation Concerns an Ascertainable Class ........................................22

II.   There Is a Reasonable Basis to Believe That the John Doe Class May Have Failed to Comply with U.S. Internal Revenue Laws ...............................................24

III.   The Information Sought About the Target Class, Including the Identities of the Class's Members, Is Not Readily Available from Other Sources .....................27

IV.   The Information Sought Is Narrowly Tailored to Information that Pertains to the Failure or Potential Failure of the John Doe Class to Comply with the Internal Revenue Laws ........................................................................................................30

CONCLUSION ..................................................................................................33

## PRELIMINARY STATEMENT

The IRS has long been concerned with U.S. taxpayers who evade their federal tax obligations by concealing taxable income in offshore tax havens or jurisdictions that provide for financial secrecy. Some taxpayers use offshore service providers to conceal assets, often by creating offshore entities, such as trusts, foundations, and corporations, and opening foreign financial accounts. One such group of offshore service providers is the Trident Trust Group ("TT-Group"), a multinational group of companies that operate under the common business name "Trident." TT-Group entities can be found in nearly thirty countries, including nearly every major tax haven in the world. Through voluntary disclosure programs and other investigations, the IRS has identified several clients of the TT-Group who appear to have used its services to unlawfully evade U.S. taxes, including creating offshore entities and accounts in tax haven jurisdictions that conceal the U.S. taxpayer's income. Some of the services offered by TT-Group bear the hallmarks of enabling unlawful tax evasion, including providing nominee directors, officers and trustees for offshore entities and mail retention services for offshore accounts that avoid creating a domestic paper trail.

Through this Petition, the IRS seeks to obtain a more comprehensive list of the TT-Group's clients so that it can ascertain whether any of them owe additional U.S. taxes.

As used herein and in the attached Declaration of Randy Hooczko ("Hooczko Declaration"), the TT-Group includes entities in almost thirty jurisdictions, including five entities in the United States. *See* Hooczko Declaration Section A and Appx. A. The IRS is seeking to identify the following class of persons, all of whom are TT-Group clients:

> United States taxpayers who, at any time during the years ended December 31, 2014, through December 31, 2023, used the services of the Trident Trust Group, including its predecessors, subsidiaries, divisions, affiliates, and associates to establish, maintain, operate, or control any foreign financial account or other foreign asset; any foreign corporation, company, trust, foundation or other legal entity; or any foreign or domestic financial account or other asset in the name of such foreign entity.

Hooczko Declaration ¶ 6.

The IRS does not know the identity of the TT-Group's U.S. clients, so it cannot summons those clients directly, nor can it generally summons TT-Group entities without a U.S. presence. Thus, to obtain the identities of TT-Group's clients and records of their transactions with TT-Group, the United States brings this *ex parte* proceeding under 26 U.S.C. § 7609(f) and (h) for leave to serve John Doe summonses (collectively, the "Summonses") on TT-USA, TCS-USA, and TFS-USA.

In addition, concurrent with this Petition, the United States is filing a petition in the U.S. District Court for District of South Dakota to serve a John Doe summons

on a TT-Group entity based in that District. *See* Hooczko Decl. ¶¶ 8–10 (list of summonsed entities). The United States is also concurrently filing a petition in the U.S. District Court for the Southern District of New York to serve summonses on (1) courier services believed to have records relating to shipments between TT-Group and its U.S. clients; (2) financial institutions believed to have records of electronic funds transfers relating to U.S. clients of the TT-Group; (3) U.S. banks that maintain correspondent accounts for foreign banks used by the TT-Group; and (4) an affiliated entity (Nevis Services Limited)—all of which are expected to have records of transactions to help identify the TT-Group's U.S. clients.[1] *Id.*

The issuance of the Summonses is warranted because, as described in detail below, (i) they relate to the investigation of an ascertainable group or class of persons, namely, U.S. taxpayers who used the TT-Group's services; (ii) there is a reasonable basis for believing these U.S. taxpayers may fail or may have failed to comply with U.S. internal revenue laws; and (iii) information sufficient to establish these U.S. taxpayers' identities is not readily available to the IRS from other sources. *See* 26 U.S.C. § 7609(f). In addition, the IRS is permitted to issue the Summonses because the information sought is narrowly tailored to pertain to the failure (or

---

[1] Nevis Services Limited is a New York corporation which functioned as a liaison and marketing affiliate of Morning Star Holdings Limited (later TT-Nevis). Hooczko Decl. ¶ 73.

potential failure) of U.S. taxpayer-clients of the TT-Group to comply with internal revenue laws. *Id.*

## BACKGROUND

### I.    U.S. Taxpayers Must Report Foreign Income and Disclose Foreign Financial Accounts and Entities

United States citizens, resident aliens, and trusts with gross annual income above the reporting threshold must file income tax returns each year reporting their income from all sources worldwide. 26 U.S.C. §§ 61, 6012. These individuals and trusts (referred to throughout this Memorandum as "U.S. taxpayers") must also disclose to the Government their ownership interests in certain foreign assets. For example, those who have financial interests in, or signature authority over, foreign financial accounts must disclose this on Schedule B of their income tax return. *See* 26 U.S.C. § 6038D; *see also* IRS, Form 1040, Schedule B, *Interest and Ordinary Dividends (2023)*, Part III, https://www.irs.gov/pub/irs-prior/f1040sb--2023.pdf. U.S. taxpayers are also required to report their financial interests in foreign financial accounts on a Report of Foreign Bank and Financial Accounts, FinCEN Form 114 (the "FBAR"),[2] when the aggregate value of those accounts exceeds $10,000 at any time during any calendar year. 31 U.S.C. § 5314; 31 C.F.R. § 1010.350. U.S. taxpayers are further required to report certain transactions with foreign persons or

---

[2] Prior to 2014, the FBAR form was Form TD F 90-22.1.

trusts, *see* 26 U.S.C. §§ 6039F, 6048, and their ownership of or control over foreign corporations, *see id.* § 6038; 26 C.F.R. § 1.6038-2(a).

## II.    Offshore Tax Evasion

U.S. taxpayers unlawfully seeking to evade their tax obligations sometimes conceal unreported taxable income in accounts in offshore no-tax, low-tax, or financial secrecy jurisdictions. Hooczko Decl. ¶ 11. Often, taxpayers rely on offshore service providers to create foreign entities to conceal their income, and to provide directors, officers, and trustees who act as such in name only to conceal the U.S. taxpayers' beneficial ownership of assets. *Id.* ¶¶ 35–38. Offshore service providers may also assist taxpayers in opening foreign financial accounts. *Id.* By using the services of offshore service providers, taxpayers may claim they have no legal connection to foreign assets or entities, while retaining actual control through means such as side agreements with the service providers. *Id.* ¶ 38. The TT-Group is one such provider—its entities have appeared as a related service provider in several of the IRS's investigations into abusive offshore arrangements over more than a decade. *Id.* ¶¶ 118–71 (describing specific examples from voluntary disclosure and streamlined FBAR programs). The Hooczko Declaration explains in detail how five U.S. taxpayers concealed offshore assets in part by using the services of TT-Group. *Id.* ¶¶ 118–67. As an example, one taxpayer concealed his business and investment income in nine "master" accounts in Switzerland (with twenty-six

sub-accounts) and three Polish accounts. *Id.* ¶¶ 132–34. Of these twelve accounts, the taxpayer used TT-Group entities to create or maintain six Swiss accounts and one Polish account. *Id.* The taxpayer and his spouse used TCS-Switzerland to conceal these accounts in three British Virgin Island "International Business Companies" of which they were the directors and beneficial owners. *Id.* ¶¶ 134–37. The IRS was not aware of the taxpayer's offshore arrangement until he and his spouse disclosed the arrangement in a 2010 voluntary disclosure, which only covered 2003 to 2008. *Id.* ¶ 137. This disclosure is just one of five detailed in the Hooczko Declaration, all of which include offshore arrangements, aided by TT-Group entities, the IRS was not aware of prior to the taxpayers' voluntary disclosures. *Id.* ¶¶ 118–67.

The IRS is concerned that the five taxpayers' actions detailed in the Hooczko Declaration represent how other TT-Group clients use the group's services to aid their tax evasion. TT-Group is a large and established provider of offshore services. It is a network of entities operating in nearly thirty jurisdictions worldwide, including in several well-known tax havens across the world. *Id.* ¶¶ 62–65, 72; *see also id.* Appx. A. Domestically, its entities have offices in at least five states: Georgia, South Dakota, New York, Florida, and Texas. *Id.* ¶ 65. The TT-Group is privately owned and has been providing corporate, trust, and fund administration services for over forty years. *Id.* ¶ 64.

Information available to the IRS shows that the TT-Group assists its U.S. clients in establishing offshore structures that aid the clients' tax evasion. *See id.* ¶¶ 118–71 (providing specific examples of tax non-compliance by TT-Group clients). The TT-Group advertises these services and specifically describes them as means to enable its clients to keep beneficial ownership information confidential, avoid public reporting, and avoid registering entities, with express references to "suitable solutions" for "tax and estate planning." *Id.* ¶¶ 75, 99, 111. These services include the creation of offshore foundations managed by nominee officers; anonymous corporations secretly owned through bearer shares; and other arrangements that conceal U.S. clients' beneficial ownership of foreign assets, such as financial accounts, in foreign jurisdictions with strong financial secrecy laws and practices. *See id.* ¶¶ 74–117. For example, three people working for or on behalf of the TT-Group are listed as the founders, collectively, of 3,845 companies in Panama. *Id.* ¶ 91. This indicates the clients are using those TT-Group employees' names to conceal the true founders and beneficial owners of those companies, and information available to the IRS suggests that at least some of the true founders are U.S. taxpayers who are using the companies to conceal assets or income from the IRS. *Id.*

Taxpayers with offshore financial accounts often access their funds through correspondent accounts at U.S. banks. *Id.* ¶¶ 54–57. When foreign financial

institutions maintain correspondent accounts at U.S. banks, their clients can access certain of the U.S. banks' services. *Id.* ¶ 55. Domestic owners of offshore accounts can use U.S.-based correspondent accounts to facilitate transactions denominated in U.S. dollars and transfer funds to and from their offshore accounts. *Id.* ¶ 56. This exploitation of correspondent banking relationships may enable tax evasion by facilitating the transfer of funds offshore. *Id.* ¶ 55. The IRS has encountered numerous examples of TT-Group entities helping U.S. taxpayers create foreign corporations and trusts, and open foreign bank accounts, all of which were concealed by their clients from the IRS. For instance, the TT-Group helped one U.S. taxpayer who had Russian and Swiss accounts in his own name to create a corporation based in the British Virgin Islands, open new Swiss and Cypriot bank accounts in the name of the BVI corporation, and transfer assets from the Russian and Swiss accounts into the new ones that were not associated with his name. *Id.* ¶¶ 139–50. The taxpayer concealed these assets and accounts from the IRS by using the TT-Group's services. *Id.*

Additionally, the TT-Group uses wire transfers to send and receive payments. *See id.* ¶¶ 112–17. Uncovering to and from whom these wire transfers were sent will aid the IRS in determining which U.S. taxpayers have used the TT-Group's services to avoid U.S. taxation. *Id.* ¶¶ 195–99. The TT-Group also uses courier services to send and receive documents and payments from clients or other affiliates. *See id.*

¶¶ 83–84, 88. Accordingly, records from these companies will further the IRS's current investigation. *Id.* Accordingly, through a petition in the Southern District of New York, the IRS also seeks to summons several financial institutions (correspondent banks), wire transfer servicers, and courier services that it believes hold data relevant to the current investigation.[3]

## III.    The TT-Group

### A. The TT-Group Offers Services that Enable U.S. Clients to Conceal Assets

Some U.S. clients use the services provided by the TT-Group to conceal assets and avoid paying U.S. taxes. Specifically, the TT-Group offers services that enable offshore account and entity concealment, including mail forwarding and retention, and so-called "shelf companies." *Id.* ¶¶ 74–117.

***Offshore account and entity concealment.*** The TT-Group provides services that allow clients subject to U.S. tax laws to conceal their ownership of foreign entities and accounts by assisting them in forming offshore companies, including by providing registered agents, directors, nominee shareholders, and bank signatories for such companies. *Id.* ¶¶ 74, 90. U.S. taxpayers concealing their beneficial

---

[3] The United States has simultaneously filed a petition to summons FedEx Corporation ("FedEx"); DHL Express (USA), Inc. ("DHL");  United Parcel Service, Inc. ("UPS"); Federal Reserve Bank of New York ("Federal Reserve-NY"); The Clearing House Payments Company LLC ("Clearing House"); HSBC Bank USA, National Association ("HSBC Bank USA"); The Bank of New York Mellon Corporation ("BNY Mellon"); Wells Fargo Bank, National Association ("Wells Fargo"); Citibank, National Association ("Citibank"); UBS AG ("UBS"); Bank of America, National Association ("Bank of America"); and Deutsche Bank Trust Company Americas ("Deutsche Bank") in the Southern District of New York.

ownership in accounts and other assets by registering these assets in foreign jurisdictions that have strong financial secrecy laws and practices use TT-Group entity addresses for registration and mail purposes. *Id.* ¶¶ 94–96. The TT-Group also provides services that assist U.S. taxpayers in obfuscating their ownership of assets by creating anonymous offshore corporations and foundations used for asset concealment, as well as providing professional trustees, corporate directors (including resident individual directors), nominee shareholders, and nominee members for these offshore entities. *Id.* ¶¶ 74, 90. The TT-Group entities also sometimes act as corporate secretaries and bank signatories for their clients' entities, which help conceal clients' identities and their beneficial ownership or control over accounts. *Id.*

By way of example, Revenue Agent Hooczko's research showed that TT-Panama lawyers Martha Salazar and Samantha Federico and TT-UK accountant Sandra Dixon are associated with an unusually large number of Panamanian entities. *Id.* ¶ 91. As of July 17, 2024, Salazar was listed as a founder of 2,039 Panamanian companies, a director of 32, an officer of 23, and was otherwise linked to 152 other Panamanian entities, for a total of 2,246 such relationships. *Id.* Federico was listed as a founder of 838 Panamanian companies, a director of 55, an officer of 52, and was otherwise linked to 57 other Panamanian entities, for a total of 1,002 such relationships. *Id.* Similarly, as of July 17, 2024, Dixon was listed as a founder of 968

Panamanian companies, a director of 115, an officer of 112, and was otherwise linked to 97 other Panamanian entity relationships, for a total of 1,292 such relationships. *Id.* By providing TT-Group employees to serve as founders, nominee directors and officers, and in other corporate roles for Panamanian entities, the TT-Group assists the beneficial owners of those entities to conceal their identities. *Id.*

The TT-Group offers services to structure ownership through bearer shares or nominee shareholders. *Id.* ¶¶ 90, 93. Bearer shares allow the identity of the true owners of a company to be left out of any records. *Id.* ¶¶ 42–43. This tactic limits TT-Group clients' on-paper involvement in these foreign corporations. *Id.* Because U.S. taxpayers are required to disclose their interests in foreign corporations (*see, e.g.*, 26 U.S.C. § 6038; 26 C.F.R. § 1.6038-2(a)), the use of bearer shares can facilitate TT-Group clients' non-compliance with internal revenue laws by making it easy to avoid such reporting without detection. Hooczko Decl. ¶¶ 42–43.

Because TT-Group entities offer services that help U.S. taxpayers mask their involvement in offshore corporations, foundations, trusts, and beneficial ownership accounts, information about the identities of U.S. clients holding assets in these foreign corporations, foundations, or accounts is not readily available to the IRS. *Id.* ¶¶ 182–83.

***Mail forwarding and retention.*** Mail forwarding and mail retention services also allow U.S. taxpayers to hide their assets from detection by avoiding the creation

of a domestic paper trail. *Id.* ¶¶ 43–45. U.S. taxpayers are more easily able to deny their ownership of foreign accounts and corporations to U.S. taxing authorities when no relevant domestic records exist. *Id.* The TT-Group offers clients these mail-related services for a fee. *Id.* ¶¶ 94–96. For example, the TT-Group can receive and distribute all correspondence addressed to a company, collect and process mail, and act as the designated recipient for legal correspondence on behalf of a business engaged in an international transaction in a jurisdiction where the client does not have a physical presence or address (i.e., agent for service or process). *Id.* Some TT-Group clients may also request that their account-related mail be destroyed. *Id.* Clients of U.S.-based TT-USA, TCS-USA, and TFS-USA can authorize the company, for a fee, to open, read, and hold their account-related *electronic* mail. *Id.* ¶ 96.

**Shelf companies.** Finally, the TT-Group offers U.S. taxpayer clients the ability to create what are known as shelf companies—companies that are registered before any client's request, and then placed on a figurative shelf for "immediate delivery" to interested clients. *Id.* ¶ 102. In the IRS's experience, U.S. taxpayers use shelf companies to conceal their beneficial ownership of assets by creating the false impression that the offshore shelf entity existed before the beneficial owner's involvement. *Id.*

### B. Information from Other Sources Corroborates the IRS's Belief That U.S. Taxpayers Use the TT-Group to Evade Taxes

Information obtained by the IRS from other enforcement efforts supports the IRS's belief that U.S. taxpayers have been using the TT-Group's services to avoid paying their U.S. taxes. Several U.S. taxpayers who filed voluntary disclosures to report to the IRS their prior non-compliance used the services of the TT-Group to avoid U.S. taxes. *Id.* ¶¶ 118–19. U.S. taxpayers using TT-Group services failed to report their offshore accounts, their ownership interest in offshore entities, and earnings from their offshore accounts to the IRS. *Id.*

The IRS has also obtained information regarding the TT-Group's offshore services through other John Doe summonses. For example, records the IRS obtained from a John Doe summons issued to the Wessell Group—a New York-based offshore service provider—indicate it sought the services of Morning Star (later merged to form TT-Nevis) and Nevis Services, to establish Nevis-based entities for its U.S. clients. *Id.* ¶¶ 83–85.

## IV. The Summonses

To further its investigation, the IRS is seeking to issue the Summonses to obtain information that will allow it to identify U.S. taxpayer clients of the TT-Group who have not disclosed to the Government the existence of their offshore entities and accounts or who have failed to report related income to the IRS. *Id.* ¶¶ 6–8. Specifically, the IRS is seeking information regarding the following class of persons:

United States taxpayers who, at any time during the years ended December 31, 2014, through December 31, 2023, used the services of the Trident Trust Group, including its predecessors, subsidiaries, divisions, affiliates, and associates to establish, maintain, operate, or control: any foreign financial account or other foreign asset; any foreign corporation, company, trust, foundation or other legal entity; or any foreign or domestic financial account or other asset in the name of such foreign entity.

*Id.* ¶¶ 6, 173.

The IRS is seeking information through the Summonses that will allow the IRS to identify U.S. taxpayer clients of the TT-Group who have not disclosed the existence of their offshore entities and accounts or who have failed to report related income. *Id.* ¶¶ 6–7; Exs. A–C. Specifically, the IRS is seeking the following information from TT-USA, TCS-USA, and TFS-USA in aid of its investigation: records relating to U.S. taxpayers who used the services of the TT-Group to establish, maintain, operate, or control any (1) foreign financial account or other foreign asset; (2) foreign entity; or (3) foreign or domestic financial account, or other asset in the name of such foreign entity for the Summons Period, including: (a) data and documents maintained in a database related to the U.S. taxpayers, (b) Know-Your-Customer files, (c) records of all services provided, (d) account activity documents, (e) memorandum or desk files evidencing communications with the U.S. taxpayers, (f) foreign entity records for entities established on behalf of U.S.

taxpayers, and (g) foreign entity records for all trusts established on behalf of U.S. taxpayers. *See* Exs. A–C.

Because TT-USA, TCS-USA, and TFS-USA are U.S. entities within the TT-Group network, the IRS believes they will have records pertaining to its investigation. And, although they are domestic entities, the IRS believes they can domestically access records of TT-Group entities in foreign jurisdictions without request as well. *See* Hooczko Decl. ¶¶ 208–19; *see also, e.g.*, *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194 (11th Cir. 2016) (holding that TCS-USA had access to records of TT-Group entities and could thus be subpoenaed for such).

## ARGUMENT

The Court should approve the John Doe summonses, which are directed to various entities that may have information pertinent to the IRS's investigation of TT-Group clients. One of the IRS's key functions is to ensure that U.S. taxpayers pay all applicable taxes. Accordingly, the Internal Revenue Code directs the Secretary of the Treasury (the "Secretary") to "cause officers or employees of the Treasury Department to proceed, from time to time, through each internal revenue district and inquire after and concerning all persons therein who may be liable to pay any internal revenue tax." 26 U.S.C. § 7601(a). In aid of this function, the Secretary is authorized to summon records and testimony that may be relevant or material to an investigation:

> For the purpose of ascertaining the correctness of any return, making a return where none has been made, [or] determining the liability of any person for any internal revenue tax . . . , the Secretary is authorized . . . [t]o summon . . . any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax . . . , or any other person the Secretary may deem proper, to appear . . . and to produce such books, papers, records, or other data . . . as may be relevant or material to such inquiry . . . .

*Id.* § 7602(a).

Congress intended "to provide the Secretary with broad latitude to adopt enforcement techniques helpful in the performance of his tax collection and assessment responsibilities." *United States v. Euge*, 444 U.S. 707, 716 n.9 (1980). Indeed, the Supreme Court has noted that the Secretary's summons power forms the "centerpiece" of the IRS's "expansive information-gathering authority." *United States v. Arthur Young & Co.*, 465 U.S. 805, 816 (1984). Because "the summons power of the IRS under the Code is quite broad, . . . courts are constrained to exercise caution before circumscribing the summons authority." *PAA Mgmt., Ltd. v. United States*, 962 F.2d 212, 216 (2d Cir. 1992); *see also Arthur Young*, 465 U.S. at 816 ("[T]he very language of § 7602 reflects . . . a congressional policy choice *in favor of disclosure* of all information relevant to a legitimate IRS inquiry." *Id.* (emphasis in original).

The IRS's authority to issue "John Doe" summonses to discover the identity of unknown individuals who may have failed to report their income was recognized

by the Supreme Court in *United States v. Bisceglia*, 420 U.S. 141 (1975), and later

codified at 26 U.S.C. § 7609(f). This provision requires the Secretary to establish

three prerequisites before serving a John Doe summons:

> Any summons . . . which does not identify the person with
> respect to whose liability the summons is issued may be
> served only after a court proceeding in which the Secretary
> establishes that—
>
>> (1) the summons relates to the investigation of a
>> particular person or ascertainable group or class of
>> persons,
>>
>> (2) there is a reasonable basis for believing that such
>> person or group or class of persons may fail or may
>> have failed to comply with any provision of any
>> internal revenue law, and
>>
>> (3) the information sought to be obtained from the
>> examination of the records or testimony (and the
>> identity of the person or persons with respect to
>> whose liability the summons is issued) is not readily
>> available from other sources.

26 U.S.C. § 7609(f). Additionally, "[t]he Secretary shall not issue any

summons . . . unless the information sought to be obtained is narrowly tailored to

information that pertains to the failure (or potential failure) of the person or group

or class of persons . . . to comply with one or more provisions of the internal revenue

law which have been identified." *Id.* The Court's determination as to whether the

IRS has met the requirements for issuance of a John Doe summons "shall be made

ex parte and shall be made solely on the petition and supporting affidavits." *Id.* § 7609(h)(2).

The Secretary has established the three statutory prerequisites for the Summonses. *First*, the Summonses relate to the IRS's investigation of an ascertainable group or class of persons, namely, U.S. taxpayers who used the TT-Group's services to establish, maintain, operate, or control offshore assets, accounts, or entities from 2014 to 2023. *Second*, there is a reasonable basis for believing that U.S. taxpayers who held an interest in any such assets, accounts, or entities concealed them and related income from the IRS, thereby violating one or more provisions of the internal revenue laws. *Third*, the information sought is not readily available to the IRS from other sources. Additionally, as described below, the Summonses are appropriate because the information sought is narrowly tailored to the identity of members of the John Doe class who potentially failed to comply with the internal revenue laws.[4]

---

[4] When the Secretary seeks to issue a John Doe summons, jurisdiction lies in the district in which the person or entity to be summonsed "resides or is found." 26 U.S.C. § 7609(h)(1). A corporation "resides" or "is found" in a district in which it maintains a physical presence. *Mensh v. United States*, No. 08 Civ. 4162 (DLI) (ALC), 2009 WL 2242295, at *2 (E.D.N.Y. Jul. 27, 2009). The proposed summons recipients all have a physical presence by virtue of at least one office within this district and/or by being headquartered in this district. *See id.*; Hooczko Decl. ¶ 67 (noting TT-USA, TCS-USA, and TFS-USA all have an office in Atlanta, GA).

## I.    The Investigation Concerns an Ascertainable Class

The Summonses relate to an IRS investigation of an ascertainable group of people, namely, U.S. taxpayers who from 2014 to 2023 used the services of the TT-Group, including its predecessors, subsidiaries, and associates, to establish, maintain, operate, or control: any foreign financial account or other foreign asset; any foreign corporation, company, trust, foundation or other legal entity; or any foreign or domestic financial account or other asset in the name of such foreign entity. Hooczko Decl. ¶¶ 173–74.[5]

Courts have found that the "ascertainable group" requirement of Section 7609(f) is satisfied when the proposed summons specifies a particular group of taxpayers in whose potentially unlawful conduct the IRS has expressed an interest. For example, this prong was satisfied where a summons "squarely particularize[d] the individuals sought from the general public" by identifying the class as California residents who, between 2005 and 2010, were involved in certain property transfers for little or no consideration. *See In re Tax Liabs. of John Does*, No. 2:10-mc-00130-MCE-EFB, 2011 WL 6302284, at *2 (E.D. Cal. Dec. 15, 2011). Similarly, the IRS satisfied the "ascertainable group" standard when a summons concerned U.S.

---

[5] The Summonses requests use a U.S. address or phone number as indicia of an individual's status as a U.S. taxpayer. Specifically, the Summonses to TT-USA, TCS-USA, and TFS-USA request documents related to its clients who are U.S. citizens or residents, as well as those clients who have a U.S. address or phone number. Hooczko Decl. Exs. A–C.

taxpayers who, as agents for subsidiaries of a certain company, sold credit insurance policies reinsured by entities in the Turks and Caicos Islands. *See In re Tax Liabs. of John Does*, No. 03-22793-CIV, 2003 WL 22953182, at *1 (S.D. Fla. Oct. 30, 2003); *see also In re Tax Liabs. of John Does*, No. 09-cv-00861-REB, Dkt. No. 4 (D. Colo. Apr. 15, 2009).

Additionally, courts have repeatedly authorized the issuance of John Doe summonses whose target group comprised individuals with interests in financial accounts managed by particular entities:

- *In re Tax Liabs. of John Does (Panama Offshore Legal Servs.)*, No. 21-mc-424, Dkt. No. 19 (S.D.N.Y. July 15, 2021) (granting *ex parte* petition for leave to serve John Doe summonses in investigation of U.S. taxpayers who used the services of a particular entity, Panama Offshore Legal Services, to establish and maintain offshore accounts and entities);

- *In re Tax Liabs. of John Does (Butterfield Bank),* No. 13-mc-377-P1, Dkt. No. 3 (S.D.N.Y. Nov. 12, 2013) (granting *ex parte* petition for leave to serve John Doe summonses in investigation of U.S. taxpayers who had interests in or authority over financial accounts maintained at or managed by The Bank of N.T. Butterfield & Son Limited or other institutions that Butterfield Bank permitted to transact business through its U.S. correspondent accounts);

- *In re Tax Liabs. of John Does (Zurcher Kantonalbank (ZKB))*, No. 13-mc-378-P1, Dkt. No. 3 (S.D.N.Y. Nov. 7, 2013) (granting *ex parte* petition for leave to serve John Doe summonses in investigation of analogous group of U.S. taxpayers with interests in financial accounts related to ZKB);

- *In re Tax Liabs. of John Does (Wegelin & Co.)*, No. 13-mc-00021-P1, Dkt. No. 4 (S.D.N.Y. Jan. 29, 2013) (granting *ex parte* petition for leave to serve John Doe summonses in investigation of

analogous group of U.S. taxpayers with interests in financial accounts related to Wegelin & Co., including accounts at financial institutions that Wegelin permitted to transact client business through its U.S. correspondent account).

Here, the relevant class of U.S. taxpayers are particularized from the general public because the class is limited to U.S. taxpayers who used the TT-Group's services to establish and maintain foreign accounts and entities during certain years. The investigation underlying the Summonses thus relates to an "ascertainable group or class of persons." 26 U.S.C. § 7609(f)(1).

## II.     There Is a Reasonable Basis to Believe That the John Doe Class May Have Failed to Comply with U.S. Internal Revenue Laws

The IRS has a reasonable basis to believe that the U.S. taxpayers who used the TT-Group's services during the relevant period may have failed to comply with the internal revenue laws. To satisfy the "reasonable basis" requirement, the IRS need only show that a transaction has occurred that is "of such a nature as to be reasonabl[y] suggestive of the possibility that the correct tax liability with respect to that transaction may not have been reported." H.R. Rep. No. 94-658, at 311 (1975), *reprinted in* 1976 U.S.C.C.A.N. 2897, 3208.

In enacting Section 7609(f), Congress did "not intend to impose an undue burden on the [IRS] in connection with obtaining a court authorization to serve this type of summons." H.R. Rep. No. 94-658, at 311, *reprinted in* 1976 U.S.C.C.A.N. 3207. Rather, Congress sought to ensure that the IRS would have "a specific

situation to present in the court," instead of using the summonses to engage in a "possible 'fishing expedition.'" *Id.*; *see also Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 320-21 (1985) (§ 7609(f) was enacted out of congressional concern that summons authority could be used to engage in "fishing expeditions" (citing H.R. Rep. No. 94-658, at 307, 311 and S. Rep. No. 94-938, at 368-69, 373)); *In re Tax Liabs. of John Does*, 688 F.2d 144, 149 (2d Cir. 1982) (Section 7609(f) was "concerned only with . . . preclud[ing] the IRS from using [John Doe] summonses to engage in possible 'fishing expeditions.'" (quoting H.R. Rep. No. 94-658, at 311)). Courts, therefore, have concluded that "Congress did not intend to impose stringent restrictions on the [IRS]'s investigatory function," but rather, that the intent was "to prevent the [IRS] from exercising its summons power in an arbitrary or quixotic manner." *In re Tax Liabs. of John Does*, 671 F.2d 977, 979–80 (6th Cir. 1982).

Here, the evidence that the IRS has obtained to date shows that the TT-Group offers services to U.S. taxpayers that, in the IRS's experience, bear the hallmarks of enabling offshore tax evasion, such as the establishment of offshore structures, including offshore foundations and anonymous corporations; the use of nominee officers and directors; undisclosed ownership through bearer shares; mail forwarding; and the concealment of beneficial ownership in foreign accounts and other foreign assets in foreign jurisdictions with strong financial secrecy laws and

practices. *See, e.g.*, Hooczko Decl. ¶¶ 74–117. In the IRS's experience, offshore tax avoidance almost always involves such accounts and offshore structures. *Id.* ¶ 34. The TT-Group also advertises these services and specifically describes them as means to provide clients the ability to keep beneficial ownership information confidential and avoid public reporting, with express references to "suitable solutions" for "tax and estate planning." *Id.* ¶¶ 75, 99, 111. Thus, the IRS has reason to believe that currently unidentified U.S. taxpayers have used the TT-Group's services to facilitate noncompliance with the internal revenue laws. *Id.* ¶¶ 175–81.

This satisfies the "reasonable basis" requirement of Section 7609(f). Courts have found that this prong is met if the IRS knows of similar past transactions associated with taxpayers failing to comply with the internal revenue laws. *See Columbus Trade Exchange*, 671 F.2d at 980 (IRS had a reasonable basis to investigate tax returns of members of a barter exchange based on fact that, in IRS's experience, members of other barter exchanges historically exhibited numerous reporting errors in reporting non-cash transactions on their tax returns); *United States v. Pittsburgh Trade Exch., Inc.*, 644 F.2d 302, 306 (3d Cir. 1981) (IRS agent's testimony that transactions of the type the summonsed party arranged for its clients were "inherently susceptible . . . to tax error" was sufficient to meet the "reasonable basis" prong); *see also United States v. Ritchie*, 15 F.3d 592, 601 (6th Cir. 1994)

(clients' payment for legal services with large amounts of cash provided a reasonable basis to issue a John Doe summons).

Likewise, here, the IRS believes—based on its experience and the evidence developed to date—that U.S. taxpayers have used the TT-Group's services to evade U.S. reporting requirements and payment of U.S. income taxes. This informed belief provides the IRS with a reasonable basis to believe that the John Doe class of U.S. taxpayers whose information it now seeks to summon "may fail or may have failed to comply with any internal revenue law." 26 U.S.C. § 7609(f).

## III. The Information Sought About the Target Class, Including the Identities of the Class's Members, Is Not Readily Available from Other Sources

The information the IRS is seeking through the Summonses is not readily available from other sources. To the contrary, the very need for the John Doe summonses arises because U.S. clients of the TT-Group may have failed to disclose their foreign bank accounts, assets, and entities to the IRS and, therefore, remain unknown to the IRS. *See In re Tax Liabs. of John Does*, No. 03-cv-22793, 2003 WL 22953182 (S.D. Fla. Oct. 30, 2003), at *1 (granting a petition for a John Doe summons on the ground that the IRS needed information from the recipient of the summons to continue its investigation of a class of taxpayers violating the internal revenue laws).

Courts have approved the issuance of John Doe summonses and held that the identities of the persons to be investigated are not "readily available," in cases where

the identities were presumably in the hands of foreign institutions. *See, e.g.*, *In re Tax Liabs. of John Does*, No. 00-cv-3919, 2000 WL 34538137, at *1 (S.D. Fla. Oct. 30, 2000) (authorizing service of John Doe summonses seeking the identity of U.S. taxpayers who used American Express and MasterCard accounts tied to certain Caribbean banks); *see also In re Tax Liabs. of John Does*, No. 02-22404-CIV, 2002 WL 32879613, at *1 (S.D. Fla. Aug. 20, 2002) (authorizing service of a John Doe summons seeking the identity of U.S. taxpayers who held certain credit card accounts with ties to foreign banks); *In re Tax Liabs. of John Does*, No. 11-cv-01686-PJH, Dkt. No. 10 (N.D. Cal. Apr. 7, 2011) (authorizing the issuance of a John Doe summons on HSBC seeking financial account records establishing the identities of U.S. taxpayers with interests in or signature or other authority with respect to HSBC's Indian bank accounts).

In particular, Courts have repeatedly authorized the issuance of John Doe summonses seeking the identity of U.S. taxpayers with direct or indirect interests in foreign financial accounts. *See Panama Offshore Legal Servs.*, No. 21-mc-424, Dkt. No. 19 (granting *ex parte* petition for leave to serve John Doe summonses in investigation of U.S. taxpayers who used the services of a particular entity, Panama Offshore Legal Services, to establish and maintain offshore accounts and entities); *Butterfield Bank*, No. 13-mc-377-P1, Dkt. No. 3 (granting *ex parte* petition for leave to serve John Doe summonses in investigation of U.S. taxpayers who had interests

in or authority over financial accounts maintained at or managed by The Bank of N.T. Butterfield & Son or other institutions that Butterfield Bank permitted to transact business through its U.S. correspondent accounts); *ZKB*, No. 13-mc-378-P1, Dkt. No. 3 (granting *ex parte* petition for leave to serve John Doe summonses in investigation of U.S. taxpayers with interests in financial accounts related to Zurcher Kantonalbank); *Wegelin*, No. 13-mc-00021-P1, Dkt. No. 4 (granting *ex parte* petition for leave to serve John Doe summonses in investigation of U.S. taxpayers with interests in financial accounts related to Wegelin & Co., including accounts at financial institutions that Wegelin & Co. permitted to transact client business through its U.S. correspondent account).

Here, the IRS currently cannot independently identify the members of the target class; in fact, the purpose of the Summonses is to discover the class members' identities. As described above and in the Hooczko Declaration, the TT-Group offers services U.S. taxpayers, including individuals and trusts, may use to establish maintain offshore entities and structures, including offshore bank accounts, and to conceal their ownership of other foreign assets, including for U.S. taxpayers. *See* Hooczko Decl. ¶¶ 74–117. Thus, the information the IRS seeks in the Summonses is not readily available to it from other sources, if at all. *See* 26 U.S.C. § 7609(f)(3).

**IV.    The Information Sought Is Narrowly Tailored to Information that Pertains to the Failure or Potential Failure of the John Doe Class to Comply with the Internal Revenue Laws**

For the reasons described above and in the Hooczko Declaration, the three statutory prerequisites for issuance of the Summonses are present here. 26 U.S.C. § 7609(f)(1)–(3). Additionally, the items requested by the Summonses are narrowly tailored to assist the IRS in identifying the unknown members of the John Doe class and investigating their failure, or potential failure, to comply with the internal revenue laws—specifically their obligation to file U.S. income tax returns reporting their worldwide income from all sources and to disclose their ownership of certain foreign assets to the Government. *Id.* § 7609(f).

The requirement that a John Doe summons be "narrowly tailored to information that pertains to the failure (or potential failure) of the [John Doe class] to comply with one or more provisions of the internal revenue law" was added, as discussed above, to ensure that "the information sought in the summons [is] at least potentially relevant to the tax liability of an ascertainable group," and that the summons is not used "for the purposes of a fishing expedition." H.R. Rep No. 116-39, at 41 (2019). The provision "is not intended to change the *Powell* standard [i.e., the showing the IRS must make in support of summons enforcement] or otherwise

affect the IRS's burden of proof."[6] *Id.* at 42; *accord* U.S. Congress, Joint Committee on Taxation, *Description of H.R. 1957, the "Taxpayer First Act of 2019,"* at 15 (2019), https://www.jct.gov/publications/2019/jcx-15-19/.

Those standards are satisfied here. The Summonses are squarely targeted at obtaining records that will help the IRS identify U.S. persons who used these TT-Group entities to establish, maintain, operate, or control offshore structures and financial accounts of TT-Group's U.S. clients. The information sought consists of (1) client identity information such as client questionnaires, Know Your Customer files, client account opening forms, and entity formation documents; (2) transaction information such as documents reflecting U.S. client activity, documents reflecting asset transfers to foreign entities, invoices billed to clients, and billing information captured from online payments; and (3) beneficial ownership information such as Know Your Customer files, account signature cards, powers of attorney, communications involving entity and account establishment, entity formation documents, and client information forms and questionnaires. Hooczko Decl. ¶¶ 184–205. The requests for client identity information are directed at adequately

---

[6] Where the Government seeks to enforce any IRS summons, it must establish "[1] that the investigation will be conducted pursuant to a legitimate purpose, [2] that the inquiry may be relevant to the purpose, [3] that the information sought is not already within the Commissioner's possession, and [4] that the administrative steps required by the Code have been followed[.]" *United States v. Powell*, 379 U.S. 48, 57-58 (1964). The Government's burden of showing such compliance is "minimal." *United States v. White*, 853 F.2d 107, 111 (2d Cir. 1988); *United States v. Davey*, 543 F.3d 996, 1000 (2d Cir. 1976).

identifying John Doe class members so that transactional and account data can reasonably be associated with particular persons. *See id.* ¶¶ 187–94. Transaction information requests are directed at adequately identifying whether taxable events took place. *See id.* ¶¶ 195–99. And beneficial ownership and control information requests are directed at adequately identifying the true beneficial owners (usually the persons who also have ultimate control over the assets) in the face of various mechanisms designed to conceal this information. *See id.* ¶¶ 200–05.

Moreover, TT-USA, TCS-USA, and TFS-USA are likely to have information responsive to these narrowly tailored requests. Information available to the IRS indicates that the TT-Group and its entities, including the domestic entities, collect information about their clients. *Id.* ¶¶ 206–24. This information includes the identity of TT-Group clients, which will help the IRS identify U.S. taxpayers who may fail or have failed to comply with U.S. tax laws. *Id.* This information is not readily available from other sources. *Id.* ¶¶ 183, 208. TT-USA, TCS-USA, and TFS-USA are also likely to have the transaction information the IRS requests in the summonses—the IRS knows from the TT-Group's public websites that its entities keep track of payments they receive for each client and generate invoices for these payments. *Id.* ¶ 211. This confidential billing information will not be readily available from sources outside the TT-Group and its affiliates. *Id.* ¶ 208. Further, TT-USA, TCS-USA, and TFS-USA records will contain valuable information about

the beneficial ownership and control of foreign entities established for U.S. taxpayers. *Id.* ¶¶ 210–11. Not only do the TT-Group and its affiliates keep record of the beneficial ownership of assets in its client files, *id.* ¶¶ 208–11, but they also require clients submitting payment for services to list the offshore entity relating to their payment, *id.* ¶ 211. Because of the secretive nature of offshore entities, the information regarding beneficial ownership and control that TT-USA, TCS-USA, and TFS-USA possess will not be readily available from other sources.

Thus, each of the items sought by the Summonses is narrowly tailored to obtaining information that may further the IRS's investigation of the John Doe class and its members' failure or potential failure to comply with the internal revenue laws.

## CONCLUSION

For the foregoing reasons, the Court should grant Government's *ex parte* petition to issue the Summonses.

Dated: December 17, 2024.          Respectfully submitted,

                                   **DAVID A. HUBBERT**
                                   Deputy Assistant Attorney General

                         By:       */s/ Christina T. Lanier*
                                   CHRISTINA T. LANIER
                                   D.C. Bar No. 1779680
                                   (202) 765-4908 (v)
                                   (202) 514-4963 (f)
                                   Christina.T.Lanier@usdoj.gov

                                   */s/ Elisabeth K. Kryska*
                                   ELISABETH K. KRYSKA
                                   Maryland Bar No. 2211280290
                                   (202) 305-6717 (v)
                                   202-514-6770 (f)
                                   Elisabeth.K.Kryska@usdoj.gov

                                   */s/ Brij B. Patnaik*
                                   BRIJ B. PATNAIK
                                   Illinois Bar # 6300524
                                   202-353-0703 (v)
                                   202-514-6770 (f)
                                   Brij.Patnaik@usdoj.gov

                                   Trial Attorneys, Tax Division
                                   U.S. Department of Justice
                                   Ben Franklin Station
                                   P.O. Boxes 7238 & 14198
                                   Washington, D.C. 20044

                                   *Attorneys for the United States of America*

Of Counsel:

RYAN K. BUCHANAN
United States Attorney

NEELI BEN-DAVID
Assistant U.S. Attorney
Georgia Bar No. 049788
Office of the U.S. Attorney
75 Ted Turner Drive, SW
Suite 600
Atlanta, GA 30303
404-581-6303
Neeli.Ben-David@usdoj.gov

## CERTIFICATE OF COMPLIANCE

I certify that this document was prepared using Times New Roman, 12- and

14-point font in compliance with this Court's Local Rules.

*/s/ Christina T. Lanier*
CHRISTINA T. LANIER
Trial Attorney, Tax Division
U.S. Department of Justice